# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
# SOUTHERN DIVISION

**THE LAMAR COMPANY, LLC**                                      **PLAINTIFF**

**VS.**                                         **CAUSE NO.**  1:23cv187 TBM-RPM

**HARRISON COUNTY SCHOOL DISTRICT**                             **DEFENDANT**

---

## THE LAMAR COMPANY, LLC'S COMPLAINT FOR DECLARATORY RELIEF
### (Jury Trial Demanded)

---

COMES NOW, the Plaintiff, The Lamar Company, LLC ("Lamar") and files this, its Complaint for Declaratory Relief against the Harrison County School District ("School District") and in support thereof would show unto the Court the following:

1. The Lamar Company, LLC ("Lamar") is a limited liability company organized under the laws of Louisiana and qualified to do business in the State of Mississippi with its principal place of business in Baton Rouge, Louisiana. Lamar's sole member is Lamar Advertising Limited Partnership, a limited partnership organized under the laws of Delaware with its principal place of business in Baton Rouge, Louisiana. Lamar Advertising Limited Partnership is owned by Lamar Advertising General Partner, LLC (a Delaware limited liability company with its principal place of business in Louisiana), Lamar Media Corp. (a Delaware corporation and citizen of Louisiana and/or Delaware), Kevin Reilly (a citizen of Louisiana), Sean Reilly (a citizen of Louisiana), and Jay Johnson (a citizen of Louisiana). Lamar Advertising General Partner, LLC's sole member is Lamar Media Corp., a citizen of Louisiana and/or Delaware.

2.	The Harrison County School District ("School District") is a public body and citizen of Mississippi with the authority to hold property, manage local educational concerns, and the right to sue and be sued. The School District may be served by process on its Board at 11072 Highway 49, Gulfport, MS 39503.

## VENUE AND JURISDICTION

3.	The acts giving rise to this action occurred and/or will occur in Harrison County, Mississippi and the public body in this action are located in Harrison County. Therefore, venue is appropriate in this court pursuant to 28 U.S.C. § 1391(b).

4.	This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332 as there is complete diversity of jurisdiction and the value of Lamar's property at issue (being the value of the declaratory relief sought) exceeds $75,000. This Court further has jurisdiction to grant the declaratory relief sought pursuant to 28 U.S.C. §§ 2201, 2202.

5.	All parties to this action are subject to this Court's exercise of *in personum* jurisdiction.

## FACTS

*Busby Litigation and Lamar's petitions for approval of sub-leases.*

6.	Lamar filed an action against Leonard Busby, III, Busby Outdoor LLC, and Busby Companies on October 24, 2016 seeking an injunction to abate a billboard being erected on property owned by the Harrison County School District adjacent to an existing Lamar Sign ("RJD Sign") without first obtaining a sign permit from the City of Gulfport. *See The Lamar Company, LLC v. Leonard Busby et al.*, in the Circuit Court of Harrison County, MS, Case No. 17-cv-00245

("Busby Litigation"). The School District filed a motion to intervene in the Busby Litigation on October 28, 2016.

7. After nearly three years of litigation, the School District challenged, for the first time, the validity of Lamar's sign lease with the School District's Sixteenth Section tenant, RJD Properties, LLC ("RJD Sign Lease"), during a hearing on July 16, 2019 by claiming that the School District never officially approved the RJD Sign Lease.

8. Considering the substantial expenses incurred by Lamar in the Busby Litigation and the potential threat to other signs, Lamar embarked on a review of its sign leases on or near Sixteenth Section property in Harrison County with the goal of identifying and resolving all existing and potential issues in a global settlement with the School District. In the course of that investigation, Lamar identified three sub-leases for sign sites on Sixteenth Section land, in addition to the RJD Sign Lease, for which it could not confirm approval of its sub-leases by the School District. One of these sign sub-leases is with Land Shapers, Inc. ("Land Shapers Sign Lease") and the other two sign sub-leases are with the Walter C. Vick Testamentary Trust ("Vick Sign Leases").

9. Lamar made a global settlement proposal on August 15, 2019 offering to dismiss its claim for injunctive relief, the sole relief sought from the School District, in the Busby Litigation in exchange for, among other things, approval of Lamar's sub-leases on Sixteenth Section land by the Harrison County School Board. The School District did not accept or counter this proposal.

10. On October 15, 2019, Lamar submitted petitions to the School Board for the approval of the Land Shapers Sign Lease and the Vick Sign Leases. These petitions have never been considered or decided by the School District.

*The RJD Sign Lease*

11.     The Harrison County School District first approved the partial sublease of the property on which the RJD Sign is located for a billboard in 1988 in its Sixteenth Section lease with Sing Oil Company ("Sing Oil Lease"). Paragraph 8 of this lease provides: "Notwithstanding the above, Lessor does hereby specifically grant the Lessee the right to sublease a portion of the leased premises to Lamar Advertising of South Mississippi, Inc., for the placement of a billboard sign, such location to be at the discretion of the Lessee."

12.     The Mississippi Department of Transportation issued permit no. 13359 on July 30, 2004 and the sign was, thereafter, constructed by Lindmark Outdoor Advertising, LLC ("Lindmark"), another sign company. By this time, the Sing Oil Lease had been assigned to Burns Oil Co., Inc. ("Burns Oil").

13.     Burns Oil notified the School District that it did not intend to renew its 16th Section lease in February of 2008. On April 2, 2008, Henry Arledge, then School District Superintendent, wrote to Burns Oil and informed them that "it was not in the best interest of the School District to maintain or manage a fueling station" on the property. Mr. Arledge instructed Burns Oil to remove its improvements and "restore the property to a suitable condition." However, with regard to the billboard, Mr. Arledge stated that the billboard company needed to contact the School District to discuss a lease. Mr. Arledge did *not* state that the billboard would need to be removed but assured that the School District would work with the sign company.

14.     On April 17, 2008, Andy McDonald, then in-house counsel for Lindmark sent a letter to Mr. Arledge forwarding both the then-current sub-lease with Burns Oil and a proposed direct lease between Lindmark and the School District. Rather than enter into a direct lease with Lindmark, the School District decided to collect rent on a month-to-month basis pursuant to the

4

terms of the Burns Oil/Lindmark sub-lease which had not been formally approved by the School District.

15.     The School District accepted payments made by Lindmark to the School District in the amount of $800.00 on May 28, 2008, June 13, 2008, and August, 2008.

16.     On June 23, 2008, the School District approved a 16th Section lease of the property with Jeff and Debra Savarese ("Savarese Lease"). The rent provided in this lease was more than double that was required in the Burns Oil lease that had expired a few months earlier. With the Savareses approved as the new 16th Section tenants, the School District ended its direct month-to-month arrangement with Lindmark but took no steps to require removal of the sign or enforce any requirements under the Savarese Lease to submit any sub-lease with Lindmark to the School District for approval. The School District raised no objection, explicit or implicit, to Lindmark continuing to sub-lease the property from the Savareses as it had in the past.

17.     Mr. McDonald drafted a sign lease which was ultimately signed by Lindmark and the Savareses. Thereafter, Lindmark continued to operate the sign as before, conspicuously and in full view of the School District's Central office located less than a quarter mile to the north of the sign. The School District raised no opposition to either the billboard or Lindmark's continued operation of it on the property.

18.     In 2010, the Savareses assigned the direct 16th Section lease to RJD with the School District's approval. Thereafter, Lindmark paid rent under its existing sub-lease to RJD as the new 16th Section tenant. Again, the School District did not require the billboard's removal or even inquire about the status of the billboard sub-lease at the time of the assignment.

19.     Lamar purchased the billboard, 2008 sub-lease, and permit from Lindmark in 2013. In section 4.11 of the asset purchase agreement, Lindmark warranted that the 2008 sub-lease was "valid and binding." Lamar has tendered rent to RJD pursuant to the 2008 sub-lease ever since.

20.     In the fall of 2016, Lamar employees noticed a new digital sign being erected on Highway 49 in Gulfport on land purchased by the Harrison County School District in 1996. It did not appear to the Lamar employees that the School District was constructing the sign. Rather, vehicles bearing the identification "Busby Outdoor" led Lamar to believe that the sign was being constructed by Busby Outdoor. Knowing the general inventory of outdoor advertising signs in Gulfport and the requirements of the Gulfport Sign Ordinance, the Lamar employees confirmed that the sign was being constructed without a permit issued by the City of Gulfport.

21.     Lamar filed the Busby Litigation on October 24, 2016 seeking an injunction to abate the Busby sign or, alternatively, for damages. The School District filed a motion to intervene in this action on October 28, 2016. Lamar specifically alleged its leasehold interest in the property on which its RJD Sign is located in both its initial and amended complaints.

22.     Despite numerous dispositive motions filed in the case over nearly three years of litigation, the School District did not challenge the validity of the RJD Sign Lease until July 16, 2019 in a hearing on Lamar's Cross Motion for Summary Judgment.

23.     On August 2, 2019 and again on August 6, 2019, counsel for the School District wrote threatening letters to RJD raising the possibility that RJD had breached its lease with the School District by assuming the Savarese's rights under the RJD Sign Lease. RJD's banker was copied on both letters.

24.     On August 29, 2019, the School District filed a summary judgment motion in the Busby Litigation asking the Circuit Court of Harrison County to find that Lamar did not have standing to file the Busby Litigation based on the argument that the RJD Sign Lease was invalid but sought no relief in the form of declaratory or injunctive relief to require removal. Nor has the School District filed a separate action seeking such relief.

25.     On February 4, 2022, Lamar filed a motion to dismiss the Busby Litigation after it reached a settlement agreement with the Busby defendants' predecessor in interest. The School District opposed this motion and urged the court to rule on its still pending summary judgment motion. On March 10, 2022, the School District filed a motion seeking an award of attorney fees from Lamar based, in part, on its belated claim that the RJD Sign Lease was invalid.

26.     On July 12, 2022, the Circuit of Harrison County, Mississippi granted Lamar's motion to dismiss. On July 19, 2022 the School District filed a motion to alter or amend the court's dismissal order. On July 12, 2023, the court entered orders making additional findings and denying the School District's claim for attorney fees. In so doing, the court found: "Lamar has demonstrated that it has legally viable arguments that its sub-lease was (at the time the lawsuit was filed) and continues to be valid and enforceable between Lamar (as lessee) and RJD (as lessor)."

27.     In a letter dated July 27, 2023, counsel for the School District noted "ongoing disputes about Lamar's occupancy and use of 16th Section land without the School District's approval on the minutes" and the existence of "potential of prospective litigation."

*The Land Shaper Sign Lease*

28. Land Shaper, Inc. entered into a Sixteenth Section lease with the School District on July 1, 1983 for a twenty-five year term. While its initial lease required the School District's permission for any sub-lease, the lease precludes the School District from arbitrarily withholding permission.

29. The original sign was executed between Land Shapers, Inc.'s Robert T. Parker and Hawk Media, Inc. ("Hawk") in August of 2000. The sign was erected pursuant to this lease on or about April 15, 2002.

30. Lamar purchased the Land Shaper Lease and sign[1] from Lindmark (Hawk's successor in interest) on September 26, 2013. Lamar entered into a renewal sign lease with Land Shaper, Inc. on November 14, 2014. The renewal lease provides for an initial term of twenty years with an automatic renewal for like terms.

31. As a result of the investigation Lamar conducted regarding its signs on or near Sixteen Section land in the Busby Litigation (referenced above), Lamar submitted a petition for approval of its 2014 renewal lease to the School District on October 15, 2019.

32. Thereafter, Lamar diligently followed up with the School District regarding the status of its petition but the School District has refused to consider or render a decision.

33. On March 23, 2020, the School District wrote a letter to Lamar's attorney stating: "It is not necessary for Mr. Gregory to continue emailing the School District about Lamar's pending petitions. The School District will notify Lamar in advance if the petitions are placed on the School Board's agenda for a School Board meeting."

---

[1] Because this sign is not located on a state-controlled artery, no MDOT permit was necessary.

34. The School District renewed Land Shaper's Sixteenth Section Lease on June 27, 2022 with full knowledge of Lamar's sign and lease with no penalty or condition requiring the removal of the sign or termination of the Land Shaper Sign Lease.

35. Lamar has included its petition regarding the Land Shaper Lease in all global settlement proposals to the School District from August 15, 2019 through May 10, 2023. The School District has not engaged in negotiations with Lamar in any meaningful way in that time nor has the School District considered Lamar's October 15, 2019 petition to date.

36. In a letter dated July 27, 2023, counsel for the School District noted "ongoing disputes about Lamar's occupancy and use of 16th Section land without the School District's approval on the minutes" and the existence of "potential of prospective litigation."

37. In the nearly four years that have passed since the petition was submitted, Lamar has continued to operate the sign as before, conspicuously and in full view of the traveling public, and in a location less than 1 mile of the School District attorney's office. In that time, the School District raised no opposition to either the billboard or Lamar's continued operation of it on the property.

*The Vick Sign Leases*

38. The Walter C. Vick Testamentary Trust has leased Sixteenth Section land located on Highway 49 in Gulfport since approximately 1984. Lamar has leased two sign sites on the property from Vick since the early 1990s. The latest renewal of Lamar's sign leases occurred on January 18, 2019.

39. The first Vick Sign was erected pursuant to MDOT Permit # 8983 issued on December 13, 1990. The second Vick Sign was erected pursuant to MDOT Permit # 9114 issued

9

on April 24, 1991. Like the RJD Sign, the Vick Signs are visible from the School District's administrative office located at 11072 Highway 49, Gulfport, MS.

40. The Vick Sixteenth Section Lease was last renewed on December 8, 2009. The renewal lease contains a provision that allows Vick "full authority" to sublease the property upon written consent of the School District "which shall not be unreasonably withheld."

41. As a result of the investigation Lamar conducted regarding its signs on or near Sixteenth Section land in the Busby Litigation (referenced above), Lamar submitted a petition for approval of its 2019 renewal leases to the School District on October 15, 2019.

42. Lamar has included its petition regarding the Vick Sign Leases in all global settlement proposals to the School District from August 15, 2019 through May 10, 2023. The School District has not engaged in negotiations with Lamar in any meaningful way in that time nor has the School District considered Lamar's October 15, 2019 petition to date.

43. In a letter dated July 27, 2023, counsel for the School District noted "ongoing disputes about Lamar's occupancy and use of 16th Section land without the School District's approval on the minutes" and the existence of "potential of prospective litigation."

44. In the nearly four years that have passed since the petition was submitted, Lamar has continued to operate the Vick Signs as they have for the past 32 years, conspicuously and in full view of the School District's Central office parking lot. In that time, the School District raised no opposition to either the signs or Lamar's continued operation of it on the property.

*The School District makes money from billboards.*

45. The Busby Litigation challenged the legality of a digital billboard constructed by Busby Outdoor or a related private entity without first obtaining a sign permit from the City of

Gulfport ("Busby Sign"). After construction, the Busby Sign was donated to the School District and is now operated by Trailhead Media (as Busby's successor in interest) under an exclusive Licensing Agreement that provides for a profit share between the sign operator and the School District.

46.     In addition to the Busby Sign, the School District has three direct sign leases with Lamar. One of these leases is for a sign located on Highway 49, near the Vick Signs, and is on Sixteenth Section land. This lease has a term of forty years and was entered into on July 31, 2006. Under this lease, Lamar pays the School District an annual rent of $3,600.

47.     Lamar also leases two sign sites on I-110 in D'Iberville on land owned by the School District. These leases were entered into by the School District on July 11, 2006 for a term of forty years each. Total rent payable to the School District over the life of these leases is $600,000.

48.     Lamar is unaware of any objection to, delay in consideration, or rejection of a proposed sub-lease by the School District prior to the Busby Litigation.

49.     The School District's threat of potential litigation regarding Lamar's existing signs on Sixteenth Section land in the School District's letter of July 27, 2023, its refusal to consider Lamar's petitions, and its threats to RJD lead Lamar to conclude that the School District may eventually pursue litigation challenging Lamar's right to continue leasing the above-described sign sites from RJD, Vick and Land Shapers.

## COUNT I – Declaratory Relief Regarding Waiver of Written Consent

50.     Lamar adopts and incorporates by reference the factual allegations, authorities, and claims set forth above.

51. In the Busby Litigation, the School District belatedly challenged the validity of the RJD Sign Lease on the basis that it could find no minutes wherein the School District expressed its consent to this sub-lease in the minutes of School Board meetings.

52. Under binding Mississippi law, the School District waived any contractual requirement for written permission to sub-lease when it failed to take timely action to enforce any provision requiring written permission.

53. Lamar asks this Court for a declaration that, under the facts pertinent to the RJD Lease, the Vick Leases, and the Land Shaper Lease, the School District has waived any contractual requirement for written approval of these sub-leases.

### COUNT II – Declaratory Relief Regarding the non-existence of a reasonable basis to withhold written consent to the pertinent sign leases

54. Lamar adopts and incorporates by reference the factual allegations, authorities, and claims set forth above.

55. Under the terms of its leases with RJD, Vick and Land Shaper, as well as applicable Mississippi law, the School District is not permitted to unreasonably withhold its written consent to the sign leases at issue.

56. Lamar asks this Court for a declaration that, under the facts pertinent to the RJD Lease, the Vick Leases, and the Land Shaper Lease, the School District has no reasonable basis to withhold written consent to Lamar's sign leases.

## JURY DEMAND

57. In compliance with the requirements of Fed. R. Civ. P. 38(b)(1), Lamar demands that all triable issues of fact be decided by a jury.

FOR THESE REASONS, upon trial by jury of all issues of fact, Lamar asks that this Court issue an ORDER granting the declaratory relief requested herein as well as any additional relief supported by the facts as alleged herein or proved at trial.

Respectfully submitted, this the 4th day of August, 2023.

**THE LAMAR COMPANY, LLC**

By Its Attorney,
CARROLL WARREN & PARKER PLLC

*/s/ Lisa A. Reppeto*
Lisa A. Reppeto, Esq.

Lisa A. Reppeto (MS Bar# 99978)
CARROLL WARREN & PARKER PLLC
188 East Capitol Street, Suite 1200 (39201)
Post Office Box 1005
Jackson, Mississippi 39215-1005
601-592-1010
lreppeto@cwplaw.com